UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 18-mc-80134-PJH<br><br>**ORDER GRANTING MOTION CHALLENGING CONFIDENTIALITY DESIGNATIONS AND GRANTING IN PART AND DENYING IN PART REQUESTS TO SEAL**<br><br>Re: Dkt. No. 32, 34 |

　　　　Before the court is applicant Qualcomm's ("Qualcomm") motion to challenge the confidentiality designations of 22 documents (the "challenged documents") designated as "Highly Confidential – Attorneys' Eyes Only" by respondent Apple Inc. ("Apple") pursuant to the protective order governing confidential material (the "protective order"). Dkt. 32. Also before the court is Apple's requests to seal the challenged documents and various filings related to Qualcomm's motion. Dkt. 34.

　　　　Having read the parties' papers and considered their argument and the relevant legal authority, and good cause appearing, the court hereby **GRANTS** Qualcomm's motion to challenge the confidentiality designations and **GRANTS IN PART** and **DENIES IN PART** Apple's sealing requests.

## BACKGROUND

　　　　Qualcomm sells modem chips. Dkt. 32-32 ¶ 3. Apple designs products that use modem chips. On or before 2013, Qualcomm and Apple entered into agreements concerning Qualcomm's sale of modem chips to third-party companies that Apple then-engaged to manufacture its iPhone and iPad devices. Id. ¶ 4.

　　　　The European Union (the "EU") has an administrative body named the European

Commission (the "EC"). Id. ¶ 5. The EC is responsible for investigating and prosecuting non-compliance with EU competition laws. Id. In 2018, after conducting an investigation and then initiating formal proceedings against Qualcomm, the EC issued a decision finding that certain terms in the agreements noted above violate EU law. Id. ¶ 7. It appears that Apple was not a party to those proceedings. Qualcomm then appealed the EC's decision to the General Court of the European Union (the "General Court"). Id.

On August 28, 2018, Qualcomm filed an application under Title 28 U.S.C. § 1782 seeking information from Apple for use in that appeal. Dkt. 1. Magistrate Judge Cousins granted that application. Dkt. 8 at 6. Following Apple's refusal to produce information called for in the application's subpoena, Judge Cousins granted Qualcomm's motion to compel the production of such information. Dkt. 24. This court affirmed Judge Cousins' order. Dkt. 29. The parties then stipulated to and jointly filed the protective order, Dkt. 30, which this court adopted without modification, Dkt. 31. Between February and June 2019, Apple produced approximately 2,000 documents to Qualcomm. Dkt. 32-32 ¶ 10. It appears that the challenged documents were part of that production. Before producing these documents, Apple marked each of them "Highly Confidential – Attorneys' Eyes Only" ("Highly Confidential") within the meaning of Section 2.10 of the protective order.[1] See Dkt. 32-10-Dkt. 32-31 (sealed versions of each challenged document, referred to as Exhibit A through Exhibit V).

Following Apple's production, and as part of its appeal, Qualcomm provided the challenged documents in a July 26, 2019 supplemental submission to the General Court. Dkt. 36-1 ¶ 4. Unlike filings made with this court, written submissions filed with the General Court are *not* public. Dkt. 35 ¶ 9. Like this court, however, the General Court ordinarily holds its hearings publicly. Dkt. 32-32 ¶ 13. The General Court scheduled a hearing on Qualcomm's appeal to occur from May 4, 2021 to May 6, 2021. Id. ¶ 12.

Qualcomm wants to use the challenged documents (or portions thereof) at that

---

[1] Going forward, the court will simply refer to the protective order's relevant sections.

2

hearing. Importantly, it wishes to do so in a public fashion. Qualcomm understands, however, that those documents' confidentiality designations bar it from doing so absent their removal. Thus, pursuant to Sections 6.1 and 6.2, Qualcomm sent Apple a letter challenging their validity. Apple maintained its position that the challenged documents qualify as confidential. After properly meeting and conferring with Apple, Qualcomm filed the instant motion under Section 6.1 seeking an order removing the subject designations.

## DISCUSSION

Section 6.4 requires that Apple bear the burden of showing that the challenged documents should retain their confidentiality designations. Section 12.6 provides that:

> Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply. Id. § 12.6

The Ninth Circuit has ruled that "[g]enerally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210 (9th Cir. 2002). Rule 26(c) provides that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Pro. 26(c)(1). Such protection may extend to "trade secret[s] or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003).

In Muench Photography, Inc. v. Pearson Educ., Inc., Judge Orrick observed that "[w]hen the confidentiality of information under a protective order is challenged, the court must conduct a two-step analysis." 2013 WL 4475900, at *3 (N.D. Cal. Aug. 15, 2013) (citing In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424 (9th

3

Cir. 2011)). First, the court "must determine whether 'particularized harm will result from disclosure of information to the public.'" In re Roman Catholic Archbishop, 661 F.3d at 424. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992). Instead, "[t]he party seeking to maintain confidentiality must 'allege specific prejudice or harm.'" Muench Photography, Inc., 2013 WL 4475900, at *3 (citing In re Roman Catholic Archbishop, 661 F.3d at 424)).

"Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d at 424. The Ninth Circuit has directed courts to consider the following non-exhaustive factors when balancing these interests:

1. Whether disclosure will violate any privacy interests.
2. Whether the information is being sought for a legitimate purpose or for an improper purpose.
3. Whether disclosure of the information will cause a party embarrassment.
4. Whether confidentiality is being sought over information important to public health and safety.
5. Whether the sharing of information among litigants will promote fairness and efficiency.
6. Whether a party benefitting from the order of confidentiality is a public entity or official.
7. Whether the case involves issues important to the public. In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d at 424 n.5

### I. Apple Failed to Show that It Will Suffer Particular Harm from Disclosure

Each of the challenged documents fall into one of two categories. Exhibits A-B and Exhibits F-V concern the modem chips used or considered for use in Apple's pre-

4

2016 products. Exhibits C-E concern Apple's efforts at persuading various domestic and foreign regulatory bodies, including the EC, to investigate and prosecute Qualcomm for its purportedly anticompetitive behavior. Apple fails to show good cause to maintain its confidentiality designations for either set of documents.

### A. The Modem Chip Documents

Except one presentation (Exhibit N), all nineteen of the documents in this first category are email chains between Apple personnel. All emails in each chain were exchanged between 2009 and 2014. The presentation is dated December 2013.

The declaration of Apple's Director of Commercial Litigation, Andrew Farthing ("Farthing"), is the only evidence submitted by Apple in support of its good cause showing. In it, Farthing characterizes these documents as "relating to Apple's business plans and product development information." Dkt. 34 ¶ 10, 12, 22, 24, 26, 28, 30, 32, 34, 36, 38, 41, 43, 45, 47, 49, 51, 53, 55. He states that their information concerns some combination of the following: internal analyses of chip suppliers, discussions of cellular technologies for use in products, comparisons of technical features, considerations for product development, cost savings and timing considerations, pricing issues, technical risks, discussions with supplier, supplier codenames, and other unspecified "important" internal business decisions. Id.

Whatever his exact characterization of that information, Farthing describes all information in each document as "strategic" and proffers the same following three justifications to support maintaining each document's confidentiality:

> [1] Disclosure of such strategic information could harm Apple by revealing to competitors Apple's internal business and technical strategies for sourcing components, including specific factors that Apple considers in selecting vendors (including cost savings), putting Apple at a competitive disadvantage when developing current and future products.
> . . .
> [2] [I]f disclosed, current and future suppliers to Apple can use this information to their competitive advantage when negotiating with Apple on future products.
> . . .
> [3] Further, Apple's internal discussions regarding chip suppliers, if revealed, may negatively impact Apple's business

5

>relationships with those suppliers for current and future projects. Dkt. 34 ¶ 10 (justifying sealing Exhibit A); Compare Id. ¶¶ 13, 23, 25, 27, 29, 31, 33, 35, 37, 39, 42, 44, 46, 48, 50, 52, 54, 56 (justifying sealing Exhibit B and Exhibits F-V).

The court finds that Apple fails to show good cause to seal these 19 challenged documents for four independent reasons. First, Farthing fails to establish that he has personal knowledge to testify to the harm that might result from the disclosure of these 19 documents. Indeed, in his declaration, Farthing omits any statement testifying to the fact that he, in fact, reviewed any of these documents. Instead, he broadly states that, by virtue of his role, he is familiar with "the ***types of documents*** that are the subject of Qualcomm's motion." Dkt. 34 ¶ 2 (emphasis added). Such familiarity says nothing about the actual challenged documents at issue.

Second, for 18 of these 19 documents, Farthing relies on the same three reasons to explain how and why Apple would suffer prejudice in the event of its disclosure. By definition, such boilerplate justifications fall short of showing the particularized harm required to maintain these documents' confidential status. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted.").

Third, none of the challenged portions of these 19 documents show any discernable strategy. At best, they reflect how Apple personnel approached a particular decision at a given stage of a particular product. Absent a discernable strategy in these documents, Farthing's claims of purported harm are unpersuasive.

Fourth, Farthing does not state that disclosure of these documents ***will*** cause Apple harm. Instead, he carefully uses the words "could," "can," and "may" to describe the harm resulting from disclosure of these documents. Such conditional qualifications fall short of the disclosure/harm nexus required by the Ninth Circuit. In re Roman Catholic Archbishop, 661 F.3d at 424 (The court "must determine whether 'particularized harm ***will result from*** disclosure of information to the public.'") (emphasis added). To the

extent Apple's counsel seeks to make up for that shortcoming in its briefing,[2] counsel fails to adequately substantiate that nexus.  Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

### B.  The Regulatory Action Documents

Exhibits C and D are internal Apple presentations dated 2015.  Exhibit E is an August 2016 email chain between Apple personnel.  As an initial matter, two of these documents are marked "privileged."  Apple, however, does not assert that any attorney-client or work-product privilege applies to them.  Given that, the court finds any such privilege waived and will turn to the merits of their confidentiality designations.

In his declaration, Farthing characterizes these three documents as "discuss[ing] Apple's confidential communications with regulatory agencies" and "contain[ing] competitively-sensitive information."  Dkt. 34 ¶¶ 14, 17, 20.  He states that they reflect Apple's "regulatory policies and strategies," including its "discussions relating to" the following: licensing, FRAND royalties, standard essential patents, royalties, rebates, and competition within various technology markets.  Id.  Again, Farthing describes all information in each document as "strategic" and proffers the same following three justifications to support maintaining each document's confidentiality:

> [1] Disclosure of such strategic information would reveal to competitors Apple's confidential discussions and strategies when communicating with regulatory agencies, as well as its strategic positions regarding licensing, FRAND and SEP issues, and competition in the cellular chipset market.
> . . .
> [2] Parties could use such information to gain an unfair advantage when competing with Apple in the relevant markets and during licensing negotiations.
> . . .
> [3] Further, disclosure to competitors of Apple's confidential analysis of the cellular market and conclusions drawn therefrom could harm Apple, as recognized in Apple Inc. v. Samsung Elecs. Co., 727 F.3d 1214, 1228 (Fed. Cir. 2013). Dkt. 34 ¶ 15 (justifying Exhibit C); Compare Id. ¶¶ 18, 21

---

[2] Dkt. 35 at 10 ("Disclosure of such strategic information would harm Apple by . . .").

(Exhibits D and E).

The court finds that Apple fails to show good cause to seal these three challenged documents for four independent reasons.  First, some of the challenged portions of these documents simply restate announcements already made by government agencies, Dkt. 32-12 at 5.  Others record communications that Apple personnel has had or intended to have with such agencies.  Dkt. 32-14 at 2.  Neither such statement qualifies as confidential.

Second, the challenged portions of these documents do not concern Apple's products or its business.  Thus, aside from putting Apple's partners on notice that it may encourage regulatory action against them, the court does not see how disclosure of these documents would afford those partners an unfair advantage in future negotiations.

Third, Apple fails to explain how the information in the challenged portions of these documents could permit a reasonable person to discern a cognizable strategy.  Absent that, the court finds Farthing's claims of harm meritless.

Fourth, while both parties fail to bring it to the court's attention, it appears, in any event, that Apple has agreed to remove the designations for most pages at issue in this category.  <u>Compare</u> Dkt. 32-8 (rows 1-3) <u>with</u> Dkt. 32-9 (bullets 1-3).

**II.   The Balance of Public and Private Interest Favor Disclosure**

The court separately concludes that the balance of public and private interests favor disclosure.  As an initial matter, Apple fails to contest Qualcomm's contention that the first and third factors support disclosure.  Given that failure, the court finds in favor of Qualcomm with respect to those factors.  The parties agree that the challenged documents do not implicate the fourth and sixth factors.  Thus, the court need consider only second, fifth, and seventh factors.

The court finds that Qualcomm's apparent intent to use the challenged documents to advance its appeal before the General Court qualifies as a legitimate purpose.  The court notes that Apple overstates that the significance of Section 7.8.  By its terms, that section requires that Qualcomm "apply" for the General Court to protect the confidentiality

8

of Apple's documents.  Qualcomm complied with that requirement.  Dkt. 36 at 8 n.1.

The court also finds that it would not be unfair to compel disclosure of the challenged documents.  By agreeing to the protective order, Apple accepted the possibility that Qualcomm might challenge its confidentiality designations (Section 6.1) and that it might be forced to defend such designations based on a good cause showing before this court (Sections 6.2, 6.3, and 6.4).   Apple is a sophisticated litigant.  It should understand that any supposed parol representation that Qualcomm made about the scope of the protective order is legally irrelevant.

Lastly, the court finds that the public interest factor cuts both ways.  The public has an interest in understanding Apple's attempts at encouraging domestic and foreign agencies to take regulatory action against other market players.  That said, the public has little interest in Apple's business-like information.  In any event, because this factor is not dispositive, the court concludes that the balance of public and private interests favors disclosure of the challenged portions of all 22 challenged documents.

### III.   Motion to Seal

As explained in Section II, Apple fails to show good cause to seal any of the challenged portions of the subject documents.  Given that, the court denies its request to seal (Dkt. 34) that information.  Kamakana v. City & City of Honolulu, 447 F.3d 1172, 1182 (9th Cir. 2006) ("The proponent of sealing bears the burden with respect to sealing.  A failure to meet that burden means that the default posture of public access prevails.").  Incidentally, the court also denies Apple's request to seal any portion of Qualcomm's opening brief (Dkt. 32-3).  Otherwise, the court grants Apple's request to seal any non-challenged portions of the subject documents.  Importantly, the protective order still applies to such portions and the court need not rely on them to decide Qualcomm's motion.  To be clear, the court emphasizes that it is *not* making a good cause finding to support its treatment of the non-challenged portions.  Instead, the court understands that those portions are before this court only for the unique reason that they are a part of the same document as the challenged portions.

9

Lastly, given that Apple does not assert that Bornstein's declaration exhibits one through four qualify for sealing, Dkt. 34 ¶¶ 57-60, the court denies any request to seal dockets 32-6 through docket 32-9.

## CONCLUSION

For the above reasons, the court **GRANTS** Qualcomm's motion challenging the confidentiality designations of the subject documents. Dkt. 32. The court **DENIES** Apple's request to seal any portion of those documents that it orders de-designated. Dkt. 34. Otherwise, the court **GRANTS** that request with respect to the remaining portions of such documents.

In light of its first order, the court removes the confidentiality designations on the documents (or their specified portion) listed below. Within **seven days** of this order, Qualcomm must file a non-redacted version of the below listed portions of these documents on the public docket. The remaining portions should remain redacted.

- Dkt. 32-10 in its entirety (APL_4167).
- Dkt. 32-11 in its entirety (APL_1755).
- Dkt. 32-12 at 2-5 (APL_1118 through _1121).
- Dkt. 32-13 at 2-5, 8 (APL_2573 through _2576 and _2579).
- Dkt. 32-14 at 2 (APL_9590).
- Dkt. 32-15 in its entirety. (APL_9944).
- Dkt. 32-16 at 2-3 (APL_3224 through _3225).
- Dkt. 32-17 at 2 (APL_4563).
- Dkt. 32-18 at 2 (APL_7513).
- Dkt. 32-19 at 2-4 (APL_7147 through _7149 (Schnell email only)).
- Dkt. 32-20 at 2 (APL_8406).
- Dkt. 32-21 at 2-3 (APL_1233 through _1234).
- Dkt. 32-22 at 3 (APL_2147).
- Dkt. 32-23 at 2 and 4 (APL_9813 and _9815).
- Dkt. 32-24 at 2-4 (APL_8224 through _8226).

- Dkt. 32-25 in its entirety (APL_1169).
- Dkt. 32-26 in its entirety (APL_5492).
- Dkt. 32-27 in its entirety (APL_1409).
- Dkt. 32-28 in its entirety (APL_1956).
- Dkt. 32-29 at 2-3 (APL_3787 through _3788).
- Dkt. 32-30 at 2 (APL_1472).
- Dkt. 32-31 at 3 (APL_5394).
- Dkt. 32-3 in its entirety.
- Dkt. 32-6 in its entirety.
- Dkt. 32-7 in its entirety.
- Dkt. 32-8 in its entirety.
- Dkt. 32-9 in its entirety.

**IT IS SO ORDERED.**

Dated: March 9, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge